19-7161 Mark Dimondstein, an individual, appellant, v. Jerry Stidman, an individual, and Jonathan Kelly, an individual. Mr. Langberg, for the appellant. Mr. Bob, for the appellees. Mr. Langberg is now unmuted. Good morning. Good morning, Your Honor, and may it please the court. I'm Mitchell Langberg for Mark Dimondstein, the appellant in this case. It occurred to me as I was watching these proceedings, Your Honor, that there's people presumably from all over the country listening to these proceedings on YouTube. And I wonder if we put judicial proceedings privilege aside and other privileges, if I were so bold and foolish to defame one of Your Honors in the course of this proceeding, would Your Honors have to come to the district court for the District of Las Vegas to sue me for defamation? Or would you in your home state, where your reputation has been harmed, where you suffer mental anguish, where your job perhaps has been put in jeopardy, be able to sue in your home state? That's the question. That's before the court today, a question that this court has not directly answered. Mr. Dimondstein resides in the District of Columbia. He works in the District of Columbia. When he suffers professional harm to his reputation, District of Columbia is where it's most felt, including financial harm, potentially risk to his current job, and potentially his future income or future employment opportunities. When he suffers mental anguish, the District of Columbia is where it is felt. Yeah, the appellees, the defendants below, for the purpose of destroying Mr. Dimondstein's reputation and causing him to lose his job in an election for president of the American Postal Workers Union. I thought he won the election. He did, Your Honor. He won the election. Causing him to lose his job? For the purpose of causing him, their goal was to damage his reputation. Okay. They published these false and defamatory allegations that accused him of crimes or being involved in money laundering. So where is... I just have a couple of quick technical questions, okay? So the Indiana defendant, he put this on his own website, right? Is that where he put it? That's correct, Your Honor. And that's accessible. Anybody could Google that. Is that correct? That's correct, Your Honor. Okay. And then the Wisconsin defendant, that was on his Facebook page? That's correct. He posted a link to that first article. Yes, Your Honor. And is that... How accessible is that? You have to remember, I don't use Facebook. Your Honor, he posted... But at the time this was posted, as I understand it, a Facebook page can be limited to just your friends or can be available to anybody, right? Do we know from the record what it was? Your Honor, I'm sorry for interrupting. You broke up for a second. He actually posted it to... So on Facebook, a person can create a group or organization, and that defendant had created that. And then he can allow anybody who asks to be a member of that group to be a member of that group. And this group was targeted towards other members of the American Postal Workers Union. So I don't recall offhand how many members of that group. I think it was upwards of 3,000 there are. But that's approximately how many people that Facebook post was available to. Okay. So your theory then is that when something is uploaded or, quote, uploaded or, quote, published on the Internet, it's published everywhere, right? That is correct, Your Honor. It is published everywhere. But that does not mean, Your Honor, that there is either jurisdiction or venue everywhere. Of course, there can't be. And the case out of the District of Maryland that we cited with an extension... There can't be venue in Wyoming in this case, right? But under your theory, there would be venue would be proper wherever in a defamation case, wherever the person, the target of the allegedly defamatory statement lived, correct? That's correct, Your Honor. Yes, Your Honor. Because in most circumstances, and I'm not sure that I can think of a particular circumstance offhand. I don't want to make that absolute, but I think that one could adopt the discussion in the Seidel case out of the District of Maryland that at least allows for that to be in most cases. And also, by the way, this court's decision in Crane, which was about personal jurisdiction, but also talked about where the injury is most substantially felt. And of course, again, Your Honor, we're talking about a statute that allows venue wherever a substantial part of the events giving rise to the claim occurred. And substantial, as the cases have informed us, does not mean the largest part or the most part, but a substantial part. And following just about any court's jurisprudence in defamation law, which admittedly in this day and age presents some unique circumstances. We all know, as this court said in Crane, the defamation, the act of defamation is not where it originates, but it's where it arrives. It's where it's read. It's where the readers have some reputational impact on them about the target. And so that could be just about any state. So the cases... The defendants, as they say in their brief in response to Crane, well, that case involves personal jurisdiction, not venue. That's true. What's your answer to that? Well, I mean, I wish... Crane is a personal jurisdiction case. And we cited in our reply brief in a footnote, and I will try to pull it up, Your Honor, that the courts have recognized that the issues of venue and personal jurisdiction are closely related. And that doesn't mean they're identical, but certainly in this context, because the issue of venue looks at where a substantial part of the claim arises. In a defamation case, particularly an online defamation case where we have this issue that it goes everywhere, we need to look at other indicia. And what the courts have done for both personal jurisdiction and venue is look to where the harm is most substantially felt. And so the court can look at the Crane case because there's a great discussion about where defamation occurs and where harm is felt. And then we can move to the district court cases that have almost uniformly, but not uniformly, taken the approach that we offer in our brief. And again, I keep mentioning the Seidel case, but we also cite Wright and Miller that cites a host of district court cases from all over the country that talk about this issue, which seems logical, especially in the context of the illogical result that would otherwise happen. It's logical for the reasons I said. Whether I was foolish enough to defame one of you, or the defendants in this case who defamed Mr. Diamonstein, the effect is felt at home and at work, which are both the same place for Mr. Diamonstein. That is one of the places where the publication necessarily occurs. That is where he is injured. That is where he suffers his mental anguish. That is where the courts and the law that whose job it is to protect Mr. Diamonstein, the state that has interest or the district. And the absurd result in the other situation would be that we have these two defendants who may or may not have worked in collusion with each other that a venue determination contrary to what we assert would result in Mr. Diamonstein either having venue in no court or having to raise the same claims based on the same facts and circumstances and the same defamatory allegations in two different district courts. Because there's no evidence that there's personal jurisdiction of either defendant in the other defendants home state. So, Your Honor, if there's no more questions, I'd like to reserve the balance of my time. If either of my colleagues have any questions, we'll hear from Mr. Bob. No. Thank you. No. Okay. Thank you very much, Your Honor. Jim Bob for the defendants. I think the central problem of the plaintiff's argument is they misunderstand what the facts are about. This was not about that. This was about campaign speech in the context of an election. The election was for president of the union and the people who vote on that in that election are the members. The members are all over the United States. So the targets, if you will, or relevant recipients of the information are members who are all over the United States. Few of them are in D.C. D.C. does not even have the largest chapter. And that's what the district court found. That the that the alleged defamation, if anything, would damage the reputation of the president of the union with union members during the context of an election. Mr. Bob, can I just take you back to what can we start with the statute here for a minute? The statute says that venue is proper in a judicial district where a substantial part of the events giving rise to the claim occur. Okay. Now, the claim here is defamation, right? It's a defamation case. And under D.C. law to prove defamation, you have to show at least publication and injury. You have to show at least those two things, injury and publication. And this is this is a motion to dismiss. So we look at the complaint and the complaint alleges that he suffered, that he works in the district, that he suffered injury and mental reputation in the district. So why for purposes of a motion to dismiss isn't that adequate? Why isn't that enough to say that that the substantial portions of this claim arise in the district? This is where the injury was. And this is where the publication occurred. The complaint does explain the motion to dismiss. We don't know. I mean, even if there's only one member of the union in the district, we just don't know that at this point. I mean, you might be able to show, you know, a summary judgment that there aren't any union members in the district. I don't know. But he's made these allegations. Yes. Well, two things. One, you have to look at the context, which is in the complaint. And the context is this was a campaign speech about his election. The election occurs by votes of members all throughout the United States. His allegation is his allegation is that the allegedly defamatory statement injured him with members in the district. This is where he was injured. Well, he didn't. In fact, from his point of view, they don't even have to be in the district. Right. If they injured if they affected their vote anywhere in the country, they injured him in the district. No. Isn't that right? No, no, because his position is it's an he's running for an office in the union. The fact that headquarters happens to be in D.C. is of no pertinence. Secondly, he's in the district. For me, this is where he was injured. If he was injured anywhere, he was injured here, wasn't he? Where else could we have been injured? He alleges his injury to be with respect to the election for president of the union. That's what he does. He doesn't even allege that anyone in the district ever saw or read the blog posts at issue. So if he the complaint fails just simply on causation. What is the if no one read the post, how can he claim an injury in D.C.? And and secondly, if you know, this statute needs to be read to protect defendants. It's written to protect defendants. And his theory means that he could sue anywhere in the United States. Or even perhaps in the world, because anyone in the United States or the world could see this post. Potentially. But but that contradicts what you just said. Right. I mean, you're you're saying that the injury that he is alleging is the injury to. To his election, because because someone may have seen the post and believed it, and that would have caused them not to have voted for him. So you're saying that the theory of his complaint is that is that the injury is essentially wherever union members are. But I guess what Judge Tatum was saying is that isn't it also a fair reading of the complaint that he's saying that he is injured because his reputation is harmed and that injures him. Yes. And the problem with this broad reading is that it reads out of the statute, the word substantial. You know, it can't it can't be just one union member in Alaska read the post and therefore he can be sued in Alaska. I mean, these defendants can be sued in Alaska. They're reading out the word substantial. And of course, that's much different than, for instance, the Walden case where The National Enquirer was allowed to sue in California, but there was a substantiality showing This is where most of the subscriptions of the National Enquirer were and if they suffered loss of subscriptions in California, it could substantially affect the publication. Well, none of those showings are here. I mean, the only pertinent The most pertinent fact is this is campaign speech directed at union members who are voting in an election and any loss is the loss of the election that he is talking about that it would adversely affect his reelection as president.  Suppose instead of The defendants having put this on the internet. They had sent a letter to every member of the union. It would be the same situation. Then you wouldn't be proper. Then you would not be proper. Except in that case, that fact would demonstrate the likelihood that somebody actually in District of Columbia actually saw it and read it. I mean, he does. Well, because Well, because to read something on the internet, you have to access the website. He says, this is a motion to dismiss. He says he was injured. Well, but he doesn't prove causation that anybody read it in DC. I mean, it's from the complaint that doesn't say anything about that. And when you're talking about posts on an internet. There are steps that people have to pay in order to access it. Yeah, the issue, the issue that we're discussing has come up over the over many years, but not in the context of the internet and the context of newspapers. For example, the New York Times, which newspapers appear and probably every jurisdiction every state of of the union and and one of the problems that That your interpretation of the venue statute seems to solve, but is that That you can get you could get a libel action in in from something printed in the New York Times and have a cause of action in every state of the union. I mean, that's one of the things that New York Times versus Sullivan in the way that they did. And so, which leads me to this question. What, what if he had sued simply in the Superior Court where the 1391 doesn't apply. I think it's pretty clear that that spirit court does not have personal jurisdiction. I mean, that's Would be decided on personal jurisdiction. Yes. And the court below didn't reach that even though he expressed serious doubt about whether there was personal jurisdiction. And let me just follow up on that. I mean, I understand that Mr Langberg argues that, well, the payment of dues. Union dues, but my understanding is that the payment is that the old check off system is gone. And it's a deduction from wages and the deduction would have occurred where these two gentlemen were employed by the postal right and not only that, but, but the money is collected by the local union, not by the, the international. Isn't that correct Yes. And that's a, you know, again, this is such a broad interpretation that that would mean if that was a sufficient minimal contact under the DC statute and under the Constitution. That would mean that every is that everybody that joins any organization could be sued. Basically, wherever that the organization is just by the mere membership or the mere Payment of dues and so that, you know, we're not protecting defendants anymore with this we're empowering plant, you know, situations in which there can be Actually grotesque forum shopping looking for, you know, the state that has either, you know, the best laws anywhere in the United States, or perhaps the world and and that and that turns the statute on his head. So the protection. I don't, I don't must be missing something. I don't understand the forum shopping concern here where the plaintiff is selecting the jurisdiction where he lives and works. Well, the but he's claiming an injury that what is pertinent about where he lives and work is he's claiming an injury there. But of course, as he concedes concedes any member who who read the blog posts. They are claiming that that the reputation of this guy running for reelection would be adversely affected and therefore one member reads the blog posts. They're alleged that but let's assume reads the blog posts can be sued anywhere because they'll say that's where the injury occurs, they that the pertinence of living and working is the common sense idea in some cases. Where, you know, that's where the decision makers are the decide whether or not you're going to be employed. Okay, so the supervisors and the, you know, plant supervisors, etc. Decide whether you're going to be employed. Well, that's not the case here is members all over the United States to decide whether or not he's going to be The other the other consideration that that's troubled me a little bit is that the the venue statute 1391 a B to, I think it is doesn't speak in terms of where the injury occurred. The injury could have occurred anywhere, but the statute talks about where where the events leading to the injury occurred. And of course the events are the posting of the of the items on the internet. And I would think they would have to allege that somebody actually read them. That was pertinent to the jurisdiction, they're claiming and and it's important to read this venue statute as as Congress intended that it was to protect the defendants, not to enable the plaintiffs to sue absolutely wherever they want to I see my time is up. Thank you. And did Mr. Council any time left Council have no time remaining Oh Council have one minute and 15 seconds. I'm sorry. Okay, go ahead. Go ahead. It's interesting that I'm arguing for a more conservative approach to venue than Council is arguing Nobody has argued that every place where it's published results in venue. What we've said is that a substantial part that says the statute says a substantial part of the events, giving rise to the claim occurred. And as I've said, this court recognized and crane is other courts have recognized. It's the receipt of the publication and it is also the harm to the reputation that give rise to the claim. And those occurred substantially not exclusively but substantially in Where did the But the events. It has to be the events, giving rise a substantial To to a claim right it doesn't say the where the injury occurred, does it Know, but your honor damage to reputation is one of the events that give rise to the claim. The So is the initial posting. Where did the initial posting occur. Those occurred in their home states, your honor. And as we know, that while none of us would argue that venue could exist or should exist everywhere. We also know that the law is not that venue only exists in one jurisdiction. So here there might be for each defendant to jurisdictions where venue is proper both the District of Columbia and The defendants home jurisdictions. Remember, they targeted this Mr. Bob seems to argue that this is to protect defendants, but defamation law is to protect The people who have been defamed these defendants aimed their attack at Mr dynasty in DC, they intended for him to lose his job in DC. By damaging his reputation. They intended him to suffer mental anguish in DC by an attack on his reputation and what's recall also that under DC law. Harm is presumed when there is Defamation per se, as we have alleged, which means that the harm is assumed to happen everywhere, but his reputation. Where, where is personal jurisdiction. How do you get the personal jurisdiction in the District of Columbia. Well, your honor. I believe that under the crane case personal jurisdiction occurs in DC exists in DC. Obviously, it exists in the defendants home states. But I believe that DC District of Columbia also has personal jurisdiction over these defendants under the crane case because They cause injury in the District of Columbia. That's what they intended to do. And we don't even need to get to the District of Columbia plus factors. Under that standard, if we even get to the District of Columbia plus factors. I might note that we're not alleging that simply because they're members of an organization that pay dues. But in addition, they Through this organization, they negotiate their employment contracts in the District of Columbia. So the organization acts as their agent to do things that they otherwise would be doing in the District of Columbia, which we believe These individuals, these individuals negotiate their employment contracts in the District of Columbia. There through the union that they belong to. The local you know the National Union handles things like negotiating health benefits on with the with the United States Postal Service. And other collective bargaining issues. So there's some things that happen at the local local union. They pay dues to both the local union and the National Union and they through their membership in the union. Have that union act as their agent in the District of Columbia to negotiate with the United States Postal Service, which if there were no union, they would have to do on their own on an individual basis. With our GTA new media case. I can't say that I am your Okay, we held there that that the mere fact that something can be downloaded from the internet in the District of Columbia is not sufficient to confer personal jurisdiction. I just wonder how you distinguish that case. Well, I don't. So that's not too different from other cases. I think that that is a I'm not prepared to say uniform rule because I haven't dealt with it in every district, but I think the rules, the same in the Ninth Circuit, which I'm much more familiar with. But we're Party. No, go ahead. You finish. Well, I apologize. I'm supposed to stop as soon as he starts speaking. No, not when we interrupt you. Well, thank you. Yes. You're not arguing. You're not arguing that we have, you know, you're not arguing that we have to decide Personal jurisdiction here. Are you the district court didn't decide. Right. That's correct. You are the district court did not decide the issue. I don't believe it's before the court at this time. So if we were to agree with you on venue, we would send it back to the district court right to decide personal jurisdiction. Correct. I agree with that, Your Honor. Even my Yeah. I just, I just wanted to point out that there are precedents in our court that say that when you have a venue question. And a personal jurisdiction question that you should decide, excuse me. You should decide the personal jurisdiction question first. Are you familiar with those cases. Yes, Your Honor. And I think that counsel, frankly, for both sides. And I don't mean to put words in Mr. Bob's mouth, but I think based on the briefings below you would see that counsel for both sides believed that the court would decide the personal jurisdiction issue. Yeah, yeah, but didn't. And then there is at least one case in our circuit that says if the district court goes ahead and decides venue without addressing personal jurisdiction, the district court has to give reasons for doing it that way. I'm not familiar with that authority, Your Honor, but it makes sense. Yeah. Okay. What about Mr. Bob's argument that there's no allegation that anybody in the District of Columbia read this. Were it necessary, and I don't think it is, but were it necessary to make that allegation, then the court below should have given us leave to amend because that certainly is not something that's not curable, particularly on a simple venue motion. Well, do you think it's necessary. What's your argument for it not being necessary. I don't think it's necessary because I think, as Your Honor mentioned before, it actually doesn't matter whether anybody in the district read it. The fact is that even if every single person who read it was in every single jurisdiction that the union members were in except the district. The harm to reputation affects Mr. Diamonstein in the district, both for his potential current and future employment, for emotional distress, as we've discussed, and for other things. And that's exactly one of the things also that the presumed damages rule is supposed to address. Presumed damages without, I see we're way over. There are some defamations that are so bad, the per se defamations, that a person might not even know who it's been communicated to. Who has the first person told the second person to the third person. And so presumed damages allows a person to bring a defamation claim without any proof of actual harm to reputation whatsoever, allowing the jury to presume such damages and determine what harm that is. And the last point related to that, Your Honor, if I may, it'll take 12 seconds, is if the court were to look at the cases throughout the country on issues of statute of limitations for defamation that's published on the internet. A defendant, a plaintiff can never say, I didn't see it. I'm sorry I didn't see it. So the statute of limitations didn't run because of delayed discovery, because the law presumes that something that's out on the internet is seen by everybody that it's available to be seen by, at least for procedural issues. Okay, thank you. Mr. Langberg, Mr. Bob, thank you both. The case is submitted.
judges: Tatel, Wilkins, Randolph